REX CRAFT ASSOCIATES, INC., Plaintiff,

v.

SMALL BUSINESS ADMINISTRATION and James Abdnor, as Administrator of the Small Business Administration, Defendants.

Civ. No. 88–0740.

United States District Court, M.D. Pennsylvania.

June 20, 1989.

Howard M. Levinson, Rosenn, Jenkins & Greenwald, Wilkes–Barre, Pa., for plaintiff.

Robert J. DeSousa, Scranton, Pa., Paul Beck, Asst. Dist. Counsel, SBA, Philadelphia Dist. Office, Region III, King of Prussia, Pa., and Mark Stephens, Gen. Counsel, SBA, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CONABOY, Chief Judge.

Presently before the court is a motion for summary judgment filed by the Defendants pursuant to Federal Rule of Civil Procedure 56. A brief in opposition has been submitted to which the Defendants have responded. At the request of counsel for the Plaintiff, oral argument on the pending motion was heard in Chambers on June 6, 1989. This matter is now ripe for our review. For the foregoing reasons, we shall grant the motion and enter judgment in favor of the Defendants and against the Plaintiff.

## PROCEDURAL HISTORY

This suit was filed by Rex Craft Associates, Inc., (hereinafter Rex Craft) against the Small Business Administration (hereinafter SBA) and James Abdnor as the SBA's administrator on May 17, 1988. In response to the complaint, the SBA filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on July 22, 1988. On August 8, 1988, Rex Craft filed its memorandum in opposition to the Motion to Dismiss and SBA submitted a reply memorandum on August 18, 1988.

On January 10, 1989, this court entered a Memorandum and Order denying the SBA's Motion to Dismiss and granting the Defendants sixty (60) days in which to file a Motion for Summary Judgment. By Order dated February 27, 1989, this court extended the time for SBA to file a Motion for Summary Judgment until April 3, 1989.

On March 31, 1989, the SBA filed its motion and supporting brief. Plaintiff filed a brief in opposition on April 17, 1989, to which the Defendants responded on April 26, 1989. After counsel for the Plaintiff requested a hearing on the pending motion, oral argument was held in Chambers on June 7, 1989.

## FACTS

On April 15, 1986, the Small Business Administration approved a loan to William L. Ditzler and Jean A. Ditzler, his wife, (hereinafter "Ditzlers") in the amount of $78,000.00 for renovations to their business in Nanticoke, Pennsylvania. According to Section 3(b) of the Loan Agreement, approximately $68,000 of the proceeds were to be used for construction/renovations and $10,000 to purchase business equipment and machinery. Repayment of the loan was to be over a ten-year period at a rate of ten percent (10%) per annum. Collateral for the loan, as outlined in Section 3(c) of the agreement, included a second mortgage on the Ditzlers' property as well as a first lien perfected security interest on machinery, equipment, furniture, fixtures, inventory, accounts receivable, and other property items.

Approximately two months after SBA issued the loan authorization, the Ditzlers entered into a contract with Rex Craft on June 11, 1986, for work to be done on the Ditzlers' business property. At the time, Plaintiff Rex Craft was not mentioned in the Ditzlers' contract with the SBA nor was the SBA a party to the contract between the Ditzlers and Rex Craft.

In August, two months after the Rex Craft contract was entered into by the Ditzlers, the following modifications were made to the SBA Loan Agreement. First, and of most importance to this case, under the heading "Terms of Loan", item 3(b) of the agreement was amended to read:

(b) Use of proceeds of the loan as follows:

Approximately $32,400.00 for construction/renovations.

Approximately $45,000.00 for business machinery and equipment/furniture and fixtures.

Second, item (3)a of the Construction Condition Section was modified to read:

Amend Construction Condition (3)a to provide for a firm contract in that

amount of $32,400.00. The work to be performed under the contract will include all renovations including plumbing and electrical work as set forth in the plans and specifications provided by Rex Craft Associates as well as the installation of a paved parking lot and all work attendant thereto.

Finally, the amending letter provided that:

All other terms and conditions set forth in the Loan Authorization which are not specifically amended by this action shall remain in force.

The complaint and contract attached thereto indicates that Rex Craft's contract with the Ditzlers was in the amount of $35,623.00 and later reduced to $28,503.00. Complaint, Paragraph 17. According to the Plaintiff, SBA distributed funds which were received by Rex Craft in the amount of $14,430.00. The remaining balance of $14,073.00, however, is alleged not to have been paid to the Plaintiff. Complaint, Paragraph 21. As indicated by the "Settlement Sheets" attached to the complaint, payment disbursements were made to Digital Control Systems, Inc.; E.M. Bartikowsky, Inc.; L & F Construction; and Rex Craft. The check in the amount of $13,002.80 designated for work done by Plaintiff, however, was returned to the SBA by the Ditzlers. Complaint, Exhibit 4 and 5.

It is Rex Craft's position that they relied on the SBA contract to furnish labor, materials, and services to the Ditzlers; that by the original terms of the loan contract as well as the amendment to that agreement, Rex Craft became a third party beneficiary to the SBA contract; and that the SBA failed to properly monitor the disbursement of payments to be allocated to Rex Craft. *See generally*, Complaint, Paragraphs 14, 24, and 53.

According to the Defendants, neither the SBA nor the Ditzlers, in the original contract or in the amended version of August 20, 1986, intended to designate any portion of the loan proceeds for payment exclusively to Rex Craft. Rather the actions taken by the Defendants were solely for the protection of the SBA and not for the intended benefit of the Plaintiff. Defendants' Brief in Support, Doc. No. 16.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that:

... (summary) judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact". (emphasis in original). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Supreme Court in *Anderson, supra* at 248, 106 S.Ct. at 2510, defined a material fact as one which "might affect the outcome of the suit under governing law ..." A determination of materiality is contingent upon the substantive law as it determines the factual disputes crucial to the establishment of the legal elements of the claim at issue. *Hlinka v. Bethlehem Steel Corporation, et al.,* 863 F.2d 279 (3d Cir. 1988), citing *Anderson, supra.*

Thus, if the court finds a material issue of fact in dispute, its inquiry does not end and the motion denied. Rather, it must proceed to determine that this material issue in dispute is *genuine* in nature. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980). As stated in, *Anderson,* "... summary judgment will not lie if the dispute about a material fact is genuine, if the evidence is such that a reasonable jury would return a verdict for the non-moving party." *Id.* at 106 S.Ct. 2512. There is no issue for trial unless there is *sufficient* evidence favoring the non-moving party for a jury to return a verdict for that party. If evidence is "merely colorable" or "not significantly probative," however, summary

judgment may be appropriate. *Id.* at 2511. In this sense, summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), in that the inquiry under each is whether the evidence presents a sufficient disagreement to require submission to a jury. *Anderson,* at 2512; *Hankins v. Temple University, et al.,* 829 F.2d 437 (3d Cir. 1987); Sonenshein, *State of Mind and Credibility in the Summary Judgment Context: A Better Approach,* 78 N.W.U.L. Rev. 774 (1983).

## DISCUSSION

After considering the briefs submitted and arguments made in Chambers, this court must conclude that third party beneficiary status was not accorded Rex Craft for two reasons:

(1) Plaintiff has failed to demonstrate that both the Ditzlers and the SBA expressed a clear intention to make Rex Craft a third party beneficiary; and,

(2) As a public lender, it would be against public policy to hold the SBA liable unless stated in unambiguous terms that a third party relationship was intended.

### A. Third Party Beneficiaries Under Pennsylvania Law.

As previously stated in our Memorandum of January 10, 1989, to assert a claim under the contract between SBA and the Ditzlers, Plaintiff must show a legal duty owed to Rex Craft as a third party beneficiary to the loan agreement. Since 1950 it has been the law in Pennsylvania that for a third party beneficiary to have standing to recover on a contract, both parties to the contract must express an intention that a third party be a beneficiary to whom the promisor's obligation runs in the contract itself. *Fizz v. Kurtz, Dowd, & Nuss, Inc.,* 360 Pa. Superior Ct. 151, 154, 519 A.2d 1037 (1987), citing *Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950).

The Pennsylvania Supreme Court, in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), looked to the Restatement of Contracts 2d (1981), specifically Section 302, in order to determine third party beneficiary status. Section 302 states:

Intent and incidental beneficiaries

(1) unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intent of a parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to beneficiary; or

(b) circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) an incidental beneficiary is not a beneficiary who is not an intended beneficiary.

*Gerace v. Holmes Protection of Philadelphia,* 357 Pa.Super. 467, 472–473, 516 A.2d 354, 357 (1986).

According to Pennsylvania case law, to create a third party beneficiary, a court must determine whether recognition of such a right to performance is "appropriate to effectuate the intent of the parties...." *Fizz,* 360 Pa.Super.Ct. at 155, 519 A.2d 1037. This is a discretionary qualification which enables a court to determine whether recognition of third party status is "appropriate" in a given case. *Ibid.,* citing *Guy,* 501 Pa. at 60, 459 A.2d 744. In addition, to become an intended beneficiary, the beneficiary must fall within either subsection (a) or (b) of the Restatement.

### B. The Original SBA Contract Terms.

As we note previously, Plaintiff's reliance on the provisions set forth in the original loan agreement to establish a third party relationship is unpersuasive in light of *William T. Hellings & Son v. Vaughn J. Slater, et al.,* Civil No. 84–3131, slip op., 1986 WL 2570 (E.D.Pa. February 2, 1986), attached to Defendants' Brief in Support, LEXIS (Genfed file June 20, 1989). In *Hellings,* similar provisions of a SBA contract were held not to establish a third

party relationship by Judge Raymond J. Broderick in the Eastern District of Pennsylvania. We see no factual distinction in this matter to persuade us to do otherwise.[1] *See also, B. Bornstein and Son, Inc. v. R.H. Macy & Company, Inc., et al.*, 278 Pa.Super. 156, 420 A.2d 477 (1980).

### C. The Amending Provisions of August 1986.

Besides the original terms of the contract, it is Plaintiff's belief that a third party beneficiary arrangement was established by the August of 1986 amended provisions to the SBA contract as well as the actions of the parties. Specifically, Plaintiff stresses four factors which allegedly evidence the intent to establish a third party relation:

1) An August 1986 telephone conversation between Mr. Edward Gayeski of Rex Craft and Mr. Richard Spinicci of the SBA regarding work to be done by Rex Craft for the Ditzlers. Complaint at ¶ 11 through 14.

2) A memorandum of Mr. Spinicci made to "clarify project costs & loan allocations." Doc. No. 23, Exhibit C.

3) The August 20, 1986 letter of Mr. Spinicci to the Ditzlers amending the "Terms of Loan" section of the contract to provide for "[a]pproximately $45,600 for business machinery and equipment/furniture and fixtures." Doc. No. 23, Exhibit E.

4) The disbursement of checks by the SBA bearing both the Ditzlers' and Rex Craft's names. Doc. No. 1; Exhibit 4 and 5; Doc. No. 23, Exhibit G.

In reviewing these factors, however, this court concludes that they are insufficient under Pennsylvania law to establish the relationship sought by Plaintiff. A review of the pleadings, including the contract executed by Rex Craft and the Ditzlers, and the loan contract as amended executed by the SBA and the Ditzlers, reveals no basis for this court to conclude that it would be "appropriate to effectuate the intentions of the parties" to determine that Rex Craft is an "intended third party beneficiary." *See Hellings supra*, at 4; *Fizz v. Kurtz, Dowd, & Nuss, Inc.*, 360 Pa. Superior Ct. 151, 519 A.2d 1037 (1987).

The contracts and actions of the parties demonstrate that Rex Craft is not a party to the loan contract and the SBA is not a party to the services/equipment contract.[2]

---

**1.** To quote our Memorandum of January 10, 1989:

...The Plaintiff's attempts to distinguish the *Slater* case on factual grounds is unpersuasive in light of the Defendants' reply brief attaching the complaint, motions and contract in *Slater*. Similar contract provisions were relied upon by the Plaintiff in the *Slater* case with payment being received by Plaintiff Hellings from the SBA throughout the construction period with the exception for the last installment. Judge Broderick, however, found that Pennsylvania law did not establish a third party beneficiary and that to find such a right would "clearly frustrate the programs of the Small Business Administration."

**2.** We note in passing that as to the actions of the parties, this Court recognizes that a third party relationship can be established at anytime during the existence of a contract. We are unpersuaded, however, that the actions of the SBA made two months after Rex Craft obligated itself contractually to the Ditzlers "to furnish labor, material, and services," caused the Plaintiff's alleged misfortunes. *See* Complaint at ¶ 14.

Plaintiff relies, in part, on an August 1986 telephone conversation with Loan Officer Spinicci and contract provisions amended that same month to demonstrate that it was "induced" into providing those items to which it was already contractually obligated to provide to the Ditzlers by its agreement of June 11, 1986. *See* Complaint at ¶ 14, Exh. 2. Plaintiff's attempts to distinguish its contractual obligations entered into in June 1986 from the performance of those responsibilities after the August 1986 amendments to the SBA loan contract are illusive. Plaintiff was contractually obligated to provide labor, material and services to the Ditzlers in June of 1986, nearly two months before it claims to have been "induced" to provide these things by the SBA's assertions in amending the loan contract. Certainly the Plaintiff can not assert that it was induced in June of 1986 into a contract with the Ditzlers based upon amended terms in the SBA loan agreement made two months later in August of 1986.

It would appear more of an afterthought on the part of Rex Craft to categorize its position as a third party beneficiary rather than, as we find here, as an original party in a separate contract between itself and the Ditzlers. If payment was not received, the Plaintiff's cause of action lies not in federal court against the SBA, but in state court for breach of contract against the Ditzlers.

The concern expressed by this court in our January 10, 1989 Memorandum as to whether Plaintiff had any right to claim third party benefits under the amended provisions of the loan contract mentioning Rex Craft by name was eliminated by the Defendants' submissions with their motion for summary judgment and by the Plaintiff's own admission that the disputed construction figure was not designated as payment to Rex Craft pursuant to Mr. Spinicci's memorandum and/or the August 20, 1986 contract amendments. Doc. No. 22 at 9.

We hold that the loan contract is exclusively between the Ditzlers and SBA and provides for a loan to the Ditzlers in the amount of $78,000.00. No other individual is mentioned as a party to the loan agreement nor does any other entity have rights under that agreement. Accordingly, this court concludes that the terms of the loan agreement do not evidence the creation of a third party contractual relationship. To do otherwise, as Judge Broderick concluded in *Hellings,* "would clearly frustrate the programs of the Small Business Administration." *Id.* at 5, citing *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).