# Follansbee Brothers Company, Appellant, v. Garrett-Cromwell Engineering Company.

*Evidence—Witnesses—Expert witness—Qualifications—Rejection of testimony.*

1. To qualify a person to testify as an expert, it is not necessary that he possess all the knowledge in his special field of activity, or that his opinions coincide with the opinions of all others skilled in the same department. The failure of such a witness to answer to the satisfaction of the opposing counsel or the court, some question involving technical or scientific knowledge, is not a sufficient basis for rejecting his evidence, where he has shown a large, experience, and general familiarity with the subject under consideration.

2. In an action on a contract relating to the construction of a steel plant, a witness may testify to the unskillfulness of the designs on which the plant was built, where it appears from his preliminary examination that the witness had had experience as a draughtsman in the making of designs for steel plants, that he had served under engineers engaged in the erection of such plants, and had had charge of the erection of some important works of the kind, himself; but in such a case the appellate court will not review the discretion of the trial judge in rejecting the testimony of a witness who had had some experience in the construction and rebuilding of open hearth furnaces as a master bricklayer and as a superintendent, but without his experience having been very extensive.

*Contract—Construction of steel plant—Evidence.*

3. Where a contract for the construction of a steel plant provided that the plans to be furnished to the plaintiff were to be similar to the plans of two furnaces which had been designed by the defendant and were in successful operation, the plaintiff may show that the plans furnished were dissimilar to those of the two existing plants; and if they do so successfully, the burden is then shifted to the defendant to account for the changes, and to show that they were within the terms of the contract.

Argued May 4, 1911. Appeal, No. 34, April T., 1911, by plaintiff, from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1907, No. 607, on verdict for defendant in case of Follansbee Brothers Company v. Garrett-Cromwell Engineering Company. Before RICE, P. J., HENDERSON,

MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover for loss alleged to have been caused by the faulty construction of a steel plant. Before COHEN, J.

At the trial the court under objection and exception struck out the testimony of the witness Millward, and refused to permit the witness Calder to testify as an expert. [5, 6–9] The court also refused under objection and exception to permit various witnesses to testify that the plans under which the plant was built did not conform to the plans under which the New Jersey plants were built.

Verdict and judgment for defendant for $1,179. Plaintiff appealed.

*Errors assigned* among others were rulings on evidence as above, quoting the bill of exceptions, and the action of the court in giving binding instructions for defendant.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett & Acheson,* for appellants.—It was the exclusive province of the jury to pass on the correctness of Millward's uncontradicted answers to technical questions: Gulf, C. & S. F. Ry. Co. v. Norfleet, 78 Tex. 321 (14 S. W. Repr. 703).

It was reversible error to strike out Millward's testimony and reject Calder's: Detweiler v. Groff, 10 Pa. 376; Ambler v. Phillips, 132 Pa. 167; Brown v. Corey, 43 Pa. 496.

It is submitted that the court also erred in refusing to permit the experts to say that a furnace built in accordance with the defendant's design could not practically be made to operate in the manufacture of open hearth steel.

The drawings which the defendant furnished were not for furnaces similar in design to those constructed for Pardee, and were therefore improper: Bucklin v. Davidson, 155 Pa. 362.

*A. Leo Weil,* with him *A. A. Stearns, Willis F. McCook* and *H. D. Montgomery,* for appellee.—No man, skilled or

unskilled, undertakes that he shall be successful; he undertakes for good faith and integrity, but not for infallibility, and he is liable to his employer for negligence, bad faith, or dishonesty, but not for lapses consequent upon mere errors of judgment: The Tom Lysle, 48 Fed. Repr. 690; Coombs v. Beede, 89 Me. 187 (36 Atl. Repr. 104); Chapel v. Clark, 117 Mich. 638 (76 N. W. Repr. 62); Sims v. Parker, 41 Ill. App. 284; Shipman v. State, 43 Wis. 381; Petersen v. Rawson, 34 N. Y. 370; McCarty v. Bauer, 3 Kan. 237; Lake v. McElfatrick, 139 N. Y. 349 (34 N. E. Repr. 922); Hubert v. Aitken, 15 Daly (N. Y.), 237 (2 N. Y. Supp. 711; 5 N. Y. Supp. 839); Schreiner v. Miller, 67 Iowa, 91 (24 N. W. Repr. 738); Somerby v. Tappan, 1 Wright (Ohio), 570; Johnson v. Wanamaker, 17 Pa. Superior Ct. 301; Niver v. Nash, 7 Wash. 558 (35 Pac. Repr. 380).

For a statement of the principles applicable to attorneys, which are by practically all of the authorities treated as analogous to architects and engineers, see the following authorities: Lynch v. Com., 16 S. & R. 368; Watson v. Muirhead, 57 Pa. 161; Enterline v. Miller, 27 Pa. Superior Ct. 463; Meredith v. Woodward, 16 W. N. C. 146; Page v. Wells, 37 Mich. 415; Hill v. Mynatt, 52 L. R. A. 883; Malone v. Gerth, 100 Wis. 166 (75 N. W. Repr. 972); Bills v. Polk, 72 Tenn. 494; Wilson v. Russ, 20 Me. 421.

Respecting the rule applicable in the case of physicians, which is also analogous, see the following authorities: McCandless v. McWha, 22 Pa. 261; Williams v. LeBar, 141 Pa. 149; Wohlert v. Seibert, 23 Pa. Superior Ct. 213; Haire v. Reese, 7 Phila. 138; Braunberger v. Cleis, 4 Am. Law Reg. (N. S.) 587; Smothers v. Hanks, 34 Iowa, 286; Sims v. Parker, 41 Ill. App. 284; Rann v. Twitchell, 82 Vt. 79 (71 Atl. Repr. 1045); 20 L. R. A. (N. S.) 1032; Staloch v. Holm, 100 Minn. 276 (111 N. W. Repr. 264; 9 L. R. A. [N. S.] 712).

The qualification of an expert is primarily a question for the trial court: Ardesco Oil Co. v. Gilson, 63 Pa. 146;

Sorg v. First German Congregation, 63 Pa. 156; Allen's App., 99 Pa. 196; Ryder v. Jacobs, 182 Pa. 624; Stevenson v. Coal Co., 203 Pa. 316.

OPINION BY HENDERSON, J., October 9, 1911:

The plaintiff's action arises out of a contract entered into with the defendant, by which the latter agreed to furnish to the plaintiff designs for a steel plant to be located in the state of West Virginia, a part of which was to consist of two open hearth basic furnaces. The defendant is an engineering company, engaged among other things in the preparation of plans for iron and steel mills and furnaces, and undertook to design the plans for the plaintiff's works and supervise the construction of the same to the extent required by the plaintiff for a consideration of $5,000. The plaintiff's attention was called by the defendant to a pair of furnaces in New Jersey built according to plans designed by the latter, which furnaces were working successfully and were stated by the defendant to be about what the plaintiff needed. It was accordingly agreed by the defendant that it would: "furnish all necessary working drawings for a pair of 25 ton basic open hearth furnaces similar to those we constructed for the C. Pardee Works at Perth Amboy, N. J. This will include the furnaces with their necessary flues, valves, stacks, charging and tapping platforms, casting pit, bottom plates, runners, fountains, casting ladle and stopper rig, ingot moulds, etc.,—in fact everything necessary to make a complete open hearth furnace with its necessary casting arrangements and other equipment such as referred to above." The contract covered plans for other parts of the plant to be erected but they are not involved in the present action. The plaintiff's allegation is that the working drawings provided by the defendant and according to which the open hearth furnaces were constructed were carelessly and unskillfully designed and impractical in application, in several respects material to a successful operation of the plant: that by reason of this failure

on the part of the defendant the plaintiff was put to large expense in the remodeling of the furnaces and subjected to heavy loss in the operating of them before they were remodeled and the defects remedied. Evidence was offered to show that the drawings prepared for the plaintiff were not similar to those used for the furnaces in New Jersey in important respects and that the failure to secure good results was due to this departure from the plan of those in New Jersey. The learned trial judge entertained the view that the obligation of the defendant was for the exercise of ordinary skill and care and that the burden was on the plaintiff not only to show the absence of such skill and care but that the defendant's failure in this respect was the cause of the unsatisfactory action of the furnaces. The plaintiff thereupon called a witness, Millward, to testify as an expert in regard to the defects in the defendant's plans. He was examined and cross-examined as to his qualification and testified that the designs did not show ordinary engineering skill and practice with respect to the provision for fuel combustion, the capacity of the sewers or draft chambers and the construction and use of the valves, these being the principal features of the plan of which complaint was made. The witness also pointed out the differences in construction between the plaintiff's furnaces and those built in New Jersey. After the general cross-examination of the witness the court struck out that portion of his testimony relating to the unskillfulness of the defendant's designs on motion of the defendant's counsel. The reason for this action is not clear as the court had twice held that the witness was competent as an expert. The opinion of the learned judge on the motion for a new trial indicates that his action was based on the facts developed in the cross-examination. What particular facts are referred to is not stated but we do not find any warrant for such action in the matters disclosed that examination. The answers of the witness mi affect the weight of his evidence but did not contra

or refute the testimony introduced when the question of his competency as an expert was before the court. The fact that he was not familiar with the methods of construction adopted or suggested by some of the persons named in the questions propounded by the counsel for the defendant or that he had not read a document presented to a society of engineers did not impeach his competency as an expert. The court was not informed what the capacity of the engineers named was but assuming that to have been well known there was no evidence as to the plans of construction recommended by them nor was there any evidence that the supposed address to the convention of engineers existed or that it contained anything on the subject concerning which the witness was interrogated and even if it had been in proof that the views of some of the named engineers or the author of the supposed article differed from that of the witness he was none the less qualified to testify in view of his wide experience in the designing and constructing of open hearth furnaces. To qualify one to testify it is not necessary that he possess all the knowledge in his special field of activity or that his opinions coincide with the opinions of all others skilled in the same department. It is a matter of common observation that experts frequently differ in opinion on the same question. The wider the extent of the experience and observation of a witness the more credit he would probably receive in the minds of the jurors, but his failure to answer to the satisfaction of the opposing counsel or the court some question involving technical or scientific knowledge is not a sufficient basis for rejecting his evidence where he has shown a large experience and general familiarity with the subject under consideration. If the exactness and accuracy of all of the witness' knowledge is to be made the test of competency it becomes necessary for the trial judge, not expert in the art or science under consideration, decide the very matters which the jury must consider determining the value to be placed on the testimony

of the expert witness.  In Ardesco Oil Co. v. Gilson, 63 Pa. 146, it was said: "while undoubtedly it must appear that the witness has enjoyed some means of special knowledge or experience no rule can be laid down in the nature of things as to the extent of it.  It must be for the jury to judge of the weight to which his opinion is entitled." Del. & Chesapeake Steam Towboat Co. v. Starrs, 69 Pa. 36, is of like import.  The court having imposed on the plaintiff the burden of showing that the defendant's drawings were unskillful and impractical and the plaintiff having introduced the evidence of the witness, Millward, we do not find anything in the testimony to sustain the action of the court in striking it out.  The witness had had experience as a draughtsman in the making of designs for such structures; he had served under engineers engaged in the erection of such plants and had had charge of the erection of some important works of the kind, himself.  He clearly appeared in the character of an expert and the plaintiff was entitled to the benefit of the evidence which he gave: Detweiler v. Groff, 10 Pa. 376; Ambler v. Phillips, 132 Pa. 167.

The case is not so clear as to the competency of the witness, Calder, who was offered as an expert and whose testimony was excluded.  The witness had had experience in the construction and rebuilding of some open hearth furnaces as a master bricklayer and finally as a superintendent, but his experience was not extensive and as the question of the admissibility of his evidence is primarily one of discretion for the court we cannot say that his capacity was so clearly shown that the court should be found to have erred in rejecting his testimony.  His knowledge was of a practical kind and limited to the field of his experience and while the argument in support of his qualification is persuasive we are not satisfied that the judgment should be reversed on this account.

Another phase of the case requires consideration. The plaintiff contended that inasmuch as the defendant had undertaken to design furnaces similar to those erected

in New Jersey, and which were in successful use, the evidence offered that the furnaces designed for the defendant were unlike the New Jersey furnaces in fundamental respects and that this dissimilarity caused the plaintiff's furnaces to be inefficient and unfit for profitable operation proved a breach of the contract and put the burden of proof on the defendant to show that the designs furnished to the plaintiff were similar to the plans of the New Jersey works or that the variations therefrom were equally as effective. The learned court held otherwise, however, and put the plaintiff to proof that the designs submitted as has been already stated were not in accordance with ordinary engineering skill as of the date when they were made. If the work which the defendant contracted to perform had been of an experimental character or there were underlying it contingencies not subject to control nor likely to be anticipated in the exercise of ordinary skill and care the view taken by the court would have been correct, but the construction of open hearth furnaces was not a novelty nor an experiment. The process had been in use for many years as was shown in this case and the defendant had designed the furnaces in New Jersey which produced the results desired and contemplated. When they therefore agreed to provide designs similar to those which produced the New Jersey furnaces their obligation was to do that very thing; not to produce identity of plan, to be sure, but one embodying the features of the New Jersey plant essential to the successful production of steel; and if the plaintiff could show that the design according to which it built was dissimilar from the New Jersey furnaces in important respects and that because of this dissimilarity the plaintiff's furnaces could not be made to work successfully, we think a prima facie case would be made out and the burden shifted to the defendant to account for the changes and to show that they were within the terms of the contract. What they were to do in the language of their proposition was to furnish: "in fact everything necessary

to make a complete open hearth furnace with its necessary casting arrangement and other equipment as referred to above," and this was to be similar to the example of their work which was expressed in the structure in New Jersey. If the thing produced according to the plan was so defective as not to meet the requirements of the purpose for which it was erected it could not be contended that there was a compliance with the contract, in view of the proven state of the art of steel production by the open hearth process and the fact that the defendant held itself out as competent to design such structures as shown by its work on the New Jersey furnaces. The employment of the defendant involved something more than the production of pictures or drawings merely. Their work was related to a well established method of steel production for which many open hearth furnaces were then used and skill with reference to the particular purpose in view was implied in the contract. If the defendant failed to regard the sample which it presented for the plaintiff's approval and in so doing gave the latter working drawings which developed furnaces of an impractical kind, not adapted to the successful production of steel, the plaintiff had a right to show that fact in support of its contention that there was a breach of contract and a resulting loss. It may be, as intimated in the course of the trial, that other causes than those assigned by the plaintiff explain the results obtained, and that the defendant is in nowise responsible; but as the rulings of the court deprived the plaintiff of the opportunity to submit the question to the jury the judgment must be reversed. It is unnecessary to consider each of the numerous assignments of error. The views expressed in the foregoing opinion cover the material points in controversy and indicate the lines on which the case should be tried.

The judgment is reversed and a venire facias de novo awarded.